16-6183 Joyce Watford v. Jefferson County Public Schools et al. Oral argument 15 minutes to be shared by the plaintiff and amicus and 15 minutes to be shared by the defendants. Mr. Dukanyich for the appellant. Good morning your honors. We'd like to reserve three minutes for rebuttal. May it please the court. The central issue in this appeal is whether holding arbitration and abeyance upon the filing of an EEOC charge or subsequent litigation as a materially adverse employment action that would violate the anti-retaliation provisions of Title VII and the ADEA. First it's important that the proper legal definition of a materially adverse employment action in a retaliation context is applied. In Burlington Northern the Supreme Court defined this standard as whether the employer's actions are harmful to the point that they could well dissuade a teacher from making or supporting a charge of discrimination. Now the CBA in this case provides a substantial benefit to employees to which they would not otherwise be entitled. The CBA provides the ability for a teacher to file a grievance and pursue arbitration of whether the employer had just cause for terminating their employment. Moreover the grievance and arbitration process are intended to expedite a resolution to the issue. Yet in operation article 9d of this collective bargaining agreement will dissuade a reasonable worker from making a charge of discrimination for fear of losing the benefit of an expedited just cause hearing. First note that article 9d is not limited in application to just discrimination claims. Article 9d states if the employee opts to pursue a complaint using another agency the parties agree to hold the grievance and abeyance until the agency complaint is complete. Here Dr. Wofford filed seven total grievances, six regarding discipline and one regarding her termination from employment. Her grievances alleged both traditional labor claims that her discipline and termination were not supported with just cause as well as allegations that they were the product of unlawful discrimination. Were all of the grievances held in abeyance? Yes ma'am. So none of them had been resolved? There were times when the grievances proceeded along, correct? That is correct. And actually Ms. Wofford filed her lawsuit in the middle of one of the arbitrations, correct? Yes, Dr. Wofford filed her federal complaints on the second day of arbitration. We didn't serve it but the arbitration would not have been concluded before the 90-day deadline for the grievance process be expedited? I mean could she have to some degree controlled the timing of when the arbitration occurred or at least influenced it? No, Your Honor. The union attempted to schedule an arbitration rather expeditiously. The first time that the arbitrator was available was 266 days after her termination and so given that 260 day... Well then that would be the same 266 days it took her charge to go through the EEOC and her to file her lawsuit. If she had waited just to... I mean you know I mean 266 days is not immediate but on the other hand in the world... It's longer than six years which is where we are now. Here's kind of what I'm thinking about this case. I'm trying... this is seems to me that this is inherently different from the cases that the parties have cited. It's inherently different from Sundance. It's inherently different from the Second Circuit case and it's inherently different from the Seventh Relief. Sequencing of type of relief. It doesn't amount to any deprivation of relief and I would think that given the scheme with which we, you know, we... you're faced, I would think the average reasonable employee would be really glad to have the opportunity to pursue what would be perceived by just about everyone as the more robust form of relief. That is the court vehicle without losing any other rights that she might have. What's your take on that? Well we would disagree with that. The arbitration, this expedited just cause hearing is very different than the court vehicle. In court she's going to have to prove only her discrimination claims that the termination and only the termination not the discipline was motivated by her age or her race or her gender. A just cause hearing is a traditional labor argument about whether they had just cause to let her go, regardless of any of those protected classes. In addition, you have to have an adverse employment action to bring the case in court. Well I would say that it's probably... These individuals, the normal outline of the process is going to force the arbitration during the normal course of events. The 266 days, even if Dr. Wofford had let it get to 266 days, have the arbitration, there would not have been an arbitration award before the 300 day statute of limitations expired. So she would have been faced with a decision. Do I file with the EEOC to preserve my rights on the discrimination claims or do I allow this arbitrator to make a decision? And having an arbitration already having occurred, that's a very long time, 10 months without a paycheck. They may very well not file that charge of discrimination because they want to get a ruling on the arbitration. And in that way, this provision holding it in abeyance, that reality of it, is going to dissuade a reasonable worker who's out of work from filing a charge of discrimination. It was the same thing after the EEOC completed. The arbitration was occurring 83 days after the right to sue was issued. She only has 90 days to get an arbitration award or decision prior to that deadline expiring. So again, as she was here, she was faced with a decision. And some individuals, and I think your honors may be implying, and the district court implied, she could have let the arbitration roll forward. But in doing so, she would have lost her right to sue. And so the product of that is an individual is going to be dissuaded from filing in court or filing a charge of discrimination because if they do, they've lost their right to the expedited just cause process. One thing that was concerning to me was the involvement of the Teachers Association because I thought they were taking her position in the arbitration process. Yeah, they very much did. And we don't have a quorum with the teachers. They're a party solely because they were a party to the collective bargaining agreement and the provision itself that allows for what we believe to be discrimination against individuals that engage in protected activity. But I thought one of your claims was that the Teachers Association, by joining in the collective bargaining agreement, which had this grievance cessation provision, was, before the fact, essentially retaliating against your client. Right. As we understand the case law, if they're a party to a collective bargaining agreement that has a discriminatory provision that later in operation discriminates against individuals, that they're a proper party. We understand that after the inclusion of that provision in the CBA, they have argued against it at every step of the way. And Dr. Wofford certainly appreciates that. So they're only a party because of the actual collective bargaining agreement and the provision being included. You argue in your brief that this provision is per se retaliatory. Other than the use of the word facially discriminatory in the Seventh Circuit case, are you any aware of any other body of case law under Title VII or any of the other employment discrimination statutes that deals with per se discrimination? Or is that a term you made up for this case? Perhaps it's a term we made up for the case. I appreciate your candor. The provision itself is retaliatory on its face. It specifically treats individuals who engage in protected activity differently than it would those that do not. Well, if there's no such thing as per se retaliatory, other than in your brief, then even if you prevailed on the finding that this were material adverse employment action, there'd still be a lot more of this case to go through. No, we don't believe so. Well, I mean, how can that be so? I mean, that doesn't mean that the defendant doesn't get to go through and come forward with a legitimate non-discriminatory reason. That doesn't mean you don't have to prove pretext or intentional discrimination at the end. It just means that the prima facie case has been made. Well, I don't think there's any dispute of all the elements for a direct case. There's no dispute that she engaged in protected activity. There's no dispute that the reason they held the proceedings in abeyance... Well, I don't know that this... They don't argue otherwise. I don't know that this is... You know, if it's not facially discriminatory, I'm not sure that you could characterize it as direct evidence. I think that that characterization becomes pretty weak. Well, the school's position is that they held it in abeyance because she filed the charge with the EEOC. I don't think that's a fact and dispute. And this is a retaliation claim, right? I'm just saying, you know, I don't know that that would establish the... I don't know that that would... I don't think it's... If it's not facially retaliatory, I don't think that resolves the case entirely, does it? We believe it does because I think that the causation is established that the reason that the proceedings were held in abeyance was because she engaged in protected activity. I'm not exactly sure that that was your argument either before the district court or here, that the same evidence that establishes materially adverse employment action also establishes causation, also establishes every other element of the case. No, the materially adverse employment action argument is that it reasonably dissuades a worker from filing a charge of discrimination. I think that it's for this panel to determine whether a provision like this does dissuade individuals from filing charges of discrimination. Thank you. I see your red light is on. Thank you. May it please the court, with respect to Judge Gibbons, your line of questioning, there is a difference between substantive discrimination claims and retaliation claims, where the prima facie case requirement does not apply in the same way to a retaliation claim. The question in both circumstances is causation. When it comes to a retaliation claim, such as this claim, there really is no question here about causation. Because she filed the charge, the employer took the action. That's the causal link that we're looking for. There's no question of pretext. They took the action because she filed the charge. When we're talking about substantive discrimination, employers will say, and other retaliation cases, in fact, where you don't have something facially invalid, facially saying because X, then Y. In other cases, the employee will say, I did this, or I am a woman, or whatever, and that's why. And the employer will say, no, it's not. This is a pretext for my line. I mean, you make a good point. So in your view, this case pretty much poses the issue of whether or not this provision is retaliatory as a matter of law. Correct. That's correct. And I would also like to point out that, I guess, again, it was you, Judge Gibbons, who expressed some thought that maybe this is just a reasonable sequencing provision. But that goes to the question of whether this is a true election of remedies, which it is not. Just because an employee files a charge with the EEOC is no indication that that employee then intends to pursue a lawsuit. This Court said very clearly in Sundance that filing a charge is not an effort, necessarily, to seek any remedies because the EEOC has no authority to issue remedies. That really wasn't my point. I mean, my point was really that a plaintiff faced with this situation has been deprived of no substantive rights. I mean, yes, there may be some delay involved, but at the time one process is being delayed, she's pursuing the process that most people would consider the more robust, the more procedurally protected one. And so there's no—you know, in the cases that everybody relies on, somebody's being deprived of some opportunity to pursue a remedy. This is merely a timing restriction. By filing a charge, she is not pursuing any remedy. The EEOC is investigating. If the EEOC determines that there is reasonable cause to believe that a violation has occurred, the EEOC invites the parties to conciliate, which is voluntary. It doesn't necessarily resolve in a lawsuit, either by the employee or by the EEOC. But at this point, the reason the arbitration stopped was because she was pursuing the remedy of a lawsuit. No, that's—actually, that's not entirely true. Initially, the arbitration stopped two times. The first time the arbitration stopped was when she filed an EEOC charge. It took the EEOC two full years to investigate that charge, during which time the arbitration was on hold. And if that two-year period of time during which the EEOC was doing its thing—this wasn't Ms. Watford pursuing her remedy—if the arbitration had continued during those two years, certainly it would have resolved within those two years. And there never would have been a lawsuit, because she would have gotten her relief or not, and there's no such thing as duplicative relief if arbitration— She couldn't bring a lawsuit if she lost the arbitration? If she lost the arbitration and the arbitration had fully resolved her individual claims, there would be nothing left for a lawsuit. So the argument the employer has made about she can get multiple bites at the apple and then choose which bite she prefers, that's just not true. What remedy is available and what relief is available in the arbitration? In the arbitration? I'm not an expert in arbitration, and I would defer to her attorney, but I would imagine she could be reinstated. One of her claims is she was wrongly dismissed. So I would imagine— Well, what could she get in addition to reinstatement? I'm sorry? What could she get in addition to reinstatement? I would have to defer to her attorney, who is an expert on arbitration. And she had these other grievances that were also stayed. All of her grievances. Right. So those had to do with other actions than the termination, as I understand it. Yes. There was one termination grievance, and then there were six that were not. I think there is some dispute about whether all of those involved discrimination claims as well as something else, but they certainly also involved just cause claims. And indeed, if she had gotten the relief she was seeking, there's no reason she would have pursued a lawsuit. And again, because the initial two-year delay was because of her EEOC charge and not because of litigation, the arbitration would have concluded. We never would have been in this situation. I'd also like to emphasize that the standard here is not what the district court said. There is a substantive claim to establish an adverse action for a substantive discrimination claim, and there is a different one for retaliation, which is expressly easier to prove. The standard is simply whether an action could well dissuade a reasonable worker from filing a charge. And given the fact that the two-year delay, strictly from having filed the charge, put her arbitration on hold, certainly this provision could deter a reasonable worker from filing. It doesn't mean that the fact that she filed makes the provision okay. The question is a reasonable worker. It's an objective standard, not a subjective one. The district court considered factors that are irrelevant, as did the Richardson court. Both of them considered that the union and the employer had agreed to the provision, so how could it be retaliatory? They thought about the likelihood that employers might stop offering arbitration. They said it was a reasonable way to streamline proceedings and that there was no malice simply by following something that had been agreed to in a collective bargaining agreement. And all of those things might be reasonable policy considerations, but as Judge Mannion pointed out in his concurrence in Board of Governors, no matter how reasonable we might think those things are, that's for Congress. Congress did not put that into the statutes, and in Burlington Northern, the Supreme Court clearly said that the only thing to consider for adverse action in the retaliation context is whether the action could well dissuade a reasonable worker from filing the charge. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Ben Basil. I represent Appellee Jefferson County Teachers Association. We respectfully request that this Court affirm the Western District of Kentucky's decision for three reasons. First, because the Teachers Association did not take any adverse action against Dr. Watford. Second, because Appellant Watford failed to prove a causal connection between her EEOC charge against the Teachers Association and the Board of Education's conduct. And finally, because Dr. Watford failed to meet her burden to prove that the Jefferson County Teachers Association is a labor organization engaged in industry affecting commerce. Sundance, Board of Governors, Burlington Northern, and Santa Fe all require for a retaliation claim to stand that an adverse action be taken. And in this case, the Jefferson County Teachers Association has not taken any action that could fairly be characterized as adverse to Dr. Watford. Well, my understanding is that the claim is that the adverse action is signing on to a collective bargaining agreement that withdraws the right to pursue a grievance while an EEOC charge is pending. That may be the claim that the plaintiffs advanced. Why is it wrong? Well, it's wrong for the same reason that the employer in Sundance did not retaliate. Because the offer, as this court ruled in Sundance, the offer of a contract with avoidable provision isn't facially retaliatory and is not itself retaliatory. In this case, the union and the school board agreed to contractual language, but we disagreed about the interpretation of that language. In 2011, when the school board first moved to place Dr. Watford's grievances in abeyance, the Teachers Association's lawyer wrote a letter to the school board stating that we didn't agree that the contract allowed the school board to place the grievance in abeyance. That we didn't agree, well, we said that paragraph three doesn't permit the district to refuse to arbitrate any grievance in any circumstance. And the school district invited us to make that case to the arbitrator, which we did when Dr. Watford served her complaint or filed her complaint against the school board. Right, so my understanding is that their claim is not that you weren't representing her during the process and advocating for her position, but that by signing on to the CBA, you in effect waived her rights to pursue grievances. Because this was a provision that the school board would then assert precluded grievances from going forward. That may be their argument. But what's wrong with it? I'm trying to get to the bottom of it. What is wrong with their argument? Sure, well, I think there are two things that are wrong with it. First is that Dr. Watford does not have any right to an arbitration under any circumstance. According to the Collective Bargaining Agreement, the Teachers Association is the party that may choose to arbitrate. And as long as it doesn't act discriminatorily or in bad faith, it doesn't have to arbitrate any cases unless it wants to. So hypothetically, if you thought there was nothing to some hypothetical teacher's claims of improper treatment, you would decide not to pursue arbitration? Absolutely. And the Teachers Association doesn't take all cases to arbitration. Because sometimes they lack merit, sometimes because if a teacher is given a written reprimand and they want to take that case to arbitration, the Teachers Association might decide that it's not in the interest of all of its members to spend its limited resources on arbitration about a written reprimand. But also, the mere agreement to contractual provision which the Board of Education uses as a reason or asserts as a reason to delay an arbitration provision is not retaliation on behalf of the Teachers Association because we don't agree that they're permitted to do that. And under the Collective Bargaining Agreement, the way to resolve those grievances is to go to arbitration, to take that dispute to the arbitrator, which is exactly what we did. And of course, the Teachers Association made the argument not only that the Collective Bargaining Agreement doesn't permit the board to delay the arbitration, but we adopted the EEOC's arguments and explained to the arbitrator that if the arbitration was in fact halted, then that could be retaliatory conduct because the act of halting it could be retaliation. And the arbitrator ruled that the arbitration could be delayed. Therefore, if agreement to the provision of the Collective Bargaining Agreement is the retaliatory act, then nothing that the Teachers Association did could stop it from being guilty of retaliation even though our conduct from 2011, from the time that the grievance was delayed, was always attempting to get to the arbitration hearing. So if the arbitrator had ruled for us, then we would be saying that it's not a retaliatory provision because it didn't delay the arbitration. And that's absurd. The arbitrator's decision is not what makes a retaliatory act. If he had ruled the other way, then we wouldn't be here because there could be no allegation that we retaliated, but based on the exact same contractual language. The labor organization argument, I don't find that in the brief, the memo you filed in the district court. Did you only raise that on appeal? No. It was pled in the complaint. I believe that we Well, did you raise it in the motion for summary judgment? I believe that it was raised in the motion for summary judgment. I'm not finding it. Maybe I'm just overlooking it, but I just looked back through it again. I have it here in my little notebook, and I'm not finding that you raised it there. Well, I believe that we raised it. We certainly argued that we If you raised it, it would be in this memo, right? Yes. Maybe I missed it. I'm not, you know, sometimes during argument, if you're looking at things, you miss them, so I believe that we raised it, Your Honor. We certainly raised it in the complaint. In the motion for summary judgment, we denied that we were an employer covered under the statute. You raised it in the complaint. Wasn't Watford the party that filed the complaint? Yes, excuse me, in our answer to the complaint. We raised as a defense that we weren't covered as a labor organization. Even when you talk about it, which I think is in your appellate brief, you talk about how many employees you have, and, you know, the test for a labor organization really, I mean, one of the elements is the number of members it had. And I don't think we're given anything by either party that would really enlighten us about whether you were, in fact, a labor organization or not. Well, Judge, I would say that we are a labor organization for all intents and purposes, but we're not engaged in an industry affecting interstate commerce, and that's what's required. So is that what your claim is as to why you're not a labor organization, because you're not engaged in an industry affecting interstate commerce? Yes, Judge, that's correct. And what's your best case for saying that? Well, there are, in fact, two cases, one from the Northern District of California and another from a district court in Pennsylvania, a federal district court in Pennsylvania, and I'll give you those case citations. The Pennsylvania case is Saina v. Bloomsburg University Faculty. It's on page 15 of the association's brief. And the California case is EEOC v. California Teachers Association. It's on page 14 of the brief to this court. I see my time has expired. Thank you. May it please the Court, Counsel. My name is Tyson Gorman, and I'm here on behalf of the Jefferson County Board of Education to request that this court affirm Judge Russell's decision dismissing the underlying cause of action in this case. There are three key areas that we would like to focus on today. First of all, this case, as Judge Gibson has, I believe, already pointed out, this is a case about whether disputes should be resolved in an orderly fashion or not. It is also a case about whether there was anything retaliatory or discriminatory about a provision in a collective bargaining agreement that was negotiated years before anyone involved in this case knew anything about it. And then finally, there's a question of what is the party's right to freely contract with one another and establish reasonable restrictions and policies and procedures for the use of an entitlement that is being granted to employees. On the issue of orderly resolution of disputes, certainly that is favored in the law. We have certain... Well, why not let the arbitration proceed, given that it was already occurring? Well, certainly the provision is intended to avoid duplication of efforts, two things going on at once, which could certainly happen if the arbitration was proceeding at the same time than an EEOC investigation. Well, but looking at the facts of this case, the EEOC events took two years. The arbitration had already started. How could you possibly say this is just a mundane sequencing as opposed to a defeating of the purported arbitration rights? The arbitration was suspended. There's only one arbitration, and it was suspended when the lawsuit was filed. It was not initiated until the completion of the EEOC's work as well. We also had a situation where a series of EEO charges were filed. It wasn't just one. It was a series of them. But again, it's the sequencing issue. It's the intention of trying to have an orderly resolution of dispute and to avoid inconsistent results so that we don't have the EEOC saying one thing, we have an arbitrator saying another thing, and we have a federal judge perhaps saying yet another. This is a dispute that has been fought on three different fronts, plaintiff's attempt at the same time, and that is simply what the defendants are trying to avoid in this case, is having to fight on multiple fronts at the same time. Well, you know, the relief would not be the same. The arbitration and the lawsuit are intended to address two different aspects of the same problem, and what the plaintiff would have to establish is completely different. I mean, I'm not saying there's not duplication, but it is incorrect to say they're doing the same thing at the same time. They, in fact, are doing two different things. There are two different things going on, certainly, and certainly the ultimate remedy available in the different forum is different. However, in this case, particularly in this case, there is an unbelievable amount of overlap. If you look at each of the grievances, each of the grievances focuses on the fact that Dr. Watford was arguing that whatever the discipline had been meted out that she was protesting through the grievance had been given inappropriately for either a discriminatory or retaliatory animus that the person giving it to her felt or was experiencing. Well, there's an overlap in the proof. What you're finding in the arbitration, or what the arbitrator would be finding, is whether there was just cause and what the court would be finding. The jury that had tried this case ultimately, if it had gone to trial, would have been something else. That's correct. You would end up with potential for differences, but certainly the overlap is significant, and significant to the point that you could have factual determinations in the differing forums that could be inconsistent with one another. That's really where the heart of this problem lies in my estimation. I think it's also why, as you pointed out, the case law that's cited by most of the parties doesn't address specifically the issue that's really before this court. The one case that really gets close to it is the Chrysler Group case. All of the rest of the cases really deal more with what I would call a true election of remedies situation, whereas here we really have an election of the order of remedies situation. Well, I mean, it's a sequencing, but it's not a true election because she couldn't elect to do the arbitration first and maintain her rights to file because of the time limits that would have been imposed. Certainly there are time limits. Certainly there are also vehicles, however, to file something and then immediately suspend it in favor of something else, which is what certainly could have happened in this circumstance. It was not done here for whatever reason. Well, she doesn't have a unilateral right to file a lawsuit and then have the court sit on it. District judges usually have a strong point of view about whether they want something to proceed or not, and most of them would err on the side of, let's get going. Certainly that's a possibility, however, in a circumstance such as this where many of the similar claims are being dealt with in an arbitration that at the time of the filing of this lawsuit was actually in process, I would think that certainly it would be a reasonable request to have been made to the federal judge at that point that can we hold this in abeyance and see what, if any, of the issues that might be similar as we do in this lawsuit will be resolved. But that would not have lifted the language of the collective bargaining agreement. That would have required your agreement, wouldn't it? Certainly our agreement would have been helpful to the court making that decision, but I think that relief could have been requested with or without our agreement. Certainly the court could order an abeyance. Well, you could, yes, but if the district court held it in abeyance, that would mean that the contractual provision would be inapplicable because she's still pursuing her relief otherwise, and so you would have to agree not to apply it or the arbitrator would have to agree not to enforce the contractual provision. She couldn't do that. That would not automatically work an ability on the part of the arbitration to progress. Under your theory, could she go back to arbitration after the conclusion of the federal court proceedings? I think that would depend on whether the issues, if there were any issues that were not covered in the federal court proceeding that were a part of the arbitration, they had not been resolved, there was no race judicata or collateral estoppel argument, absolutely. And frankly, I think that's where we find ourselves at this point. I do anticipate that this case will return to arbitration. Now, what will be handled in arbitration will be an interesting question. We had a pending motion for summary judgment relating to the bulk of plaintiff's claims at a time that plaintiff agreed to dismiss the case with prejudice. So where that leaves us in terms of what is left and not left to be resolved by the arbitrator will be an interesting question, but no, I fully anticipate that we'll be back in arbitration with this case at the conclusion of this proceeding. I have one quick question. Then I'm going to shut up and your time's up. What, in determining whether the provision is material, well, would be an adverse employment action under the Burlington Northern Standard, is it appropriate, are your aims in having the provision an appropriate part of that consideration? And was that at all a part of the record in connection with evidence to that effect in the record as a part of the summary judgment motion record? I think I missed your question. I'm sorry. You argued that you were seeking, you were arguing about the rationale for this provision. And I'm saying, one, does that matter at this point, and two, was there evidence in the record that the district court could consider on that point? Okay. Yes, we did point out the rationale. The rationale was something that was focused on by Judge Russell in his opinion, certainly. In terms of the record, I'm not sure there was per se proof of the rationale. All of this was handled on a summary judgment fashion. Proof is key to summary judgment motion. I don't know if there was specific proof relating to the rationale or not. I think the rationale, really the dispute over this particular provision. I got it. Thank you. Thank you. Appreciate it. Your Honor, I just want to raise a few points. First, with regard to the orderly fashion of the events that led us here six years later, keep in mind that it's JCBE that has held the proceedings in advance. There were two arbitrations. There was one scheduled for July of 2011, 266 days after the termination. They held that in advance. It never got off the ground, but they held it in advance. Two years after the EEOC is investigated, a right to sue is issued. It goes to arbitration 83 days later, and that's held in advance too on their motion. Keep in mind that the Teachers Association argued against that. The Teachers Association in their briefs argue that they never alleged that Wofford had been discriminated against or that JCBE had breached the CBA by engaging in acts of discrimination at the arbitration. The arbitrator noted in his opinion, in his first paragraph, that there was no claim at arbitration that the grievance had been terminated on account of her race, gender, etc. The arbitration was not about the claims of discrimination. It was about just cause. The claims before the EEOC were about discrimination. The disorder, the chaos, the tirade, everything that they described Dr. Wofford's process are just her preserving her legal rights. She has to file a charge with the EEOC within 300 days of being let go or she forever waives the right to pursue those claims. She has to file a complaint in federal court within 90 days of the right to sue or she forever loses those claims. She's simply preserving her rights. She is not filing multiple charges for no good cause. It's because they held it in abeyance. It's because she has to preserve her rights. In addition, they note that Chrysler is the closest case to this one, but in Chrysler they never analyzed whether an abeyance would dissuade a reasonable worker from filing a charge. That analysis was just never done. That was done in the Wedding case, which I understand was overruled, but the logic certainly still applies. The appellant also noted a collateral estoppel issue. I just want to point out two things regarding that. First, Dr. Wofford voluntarily dismissed her discrimination claims before the district court. The only remaining claim is this one, that is whether this provision on its face is retaliatory. Yet it's been nearly a year and they haven't started the arbitration over the just cause proceedings or the discrimination. So apparently if she files any complaint against the board, regardless of whether there's any overlap with regard to the underlying proceedings, she can't go forward with arbitration. With regard to collateral estoppel, this court, as recently as 2012, indicated that collateral estoppel does not preclude litigation of factual issues decided in a labor arbitration governed by a collective bargaining agreement when the plaintiff subsequently brings a lawsuit alleging violation to the civil rights statutes. In what case was that? That's McDoule versus City of Saginaw, 471 Fed, approximate 464. What relief would you want against the union? We would just want the provision to be declared. With regard to the union, we just want the provision to be declared retaliation on its face. But you're not seeking anything more in the sense of damages or anything? No, nothing. Thank you. Thank you all for your argument. The case will be submitted. Would the clerk call the next case, please?